# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ROSY BLUE, NV,**

      **Plaintiff,**

-vs-            **Case No.  6:07-cv-465-Orl-31JGG**

**CHAD DAVIS and DAVIS &
ASSOCIATES, LLC,**

      **Defendants.**

_____

# ORDER

   This matter comes before the Court on a Motion to Dismiss (Doc. 8) filed by Defendants

Chad Davis ("Davis") and Davis & Associates, LLC ("D&A"), and Plaintiff's Response thereto

(Doc. 12).

## I. Background

   Plaintiff Rosy Blue, NV ("Rosy") filed a Complaint in this Court on March 16, 2007,

which alleges eleven counts[1] against Davis and D&A for fraud in the inducement (Counts I and II),

breach of contract (Count III), conversion (Counts IV and V), civil theft (Counts VI and VII),

equitable lien and/or constructive trust (Counts VIII and IX) and replevin (Counts X and XI).

(Doc. 5).  The following is a statement of facts consistent with those alleged in Plaintiff's

Complaint.

_____

[1]The last five counts of Plaintiff's Complaint are mis-numbered, because the complaint
contains two counts entitled "Count VI". (Doc 1 at 16 and 18). Therefore, this Court will refer to the
counts as they should have been numbered, rather than as they are numbered.

Rosy is a Belgium corporation and worldwide seller and distributor of diamonds that has been in business for 45 years. (Doc. 1 at 2).  In April of 2006, Davis traveled to Belgium to inquire about purchasing diamonds from Rosy on behalf of himself and his company, D&A. (Doc. 1 at 3). Davis represented that he was in the business of selling diamonds and that he had sufficient financial assets and clientele to support his purchase of diamonds from Rosy and re-sale at a profit in the United States. *Id*. Based on these representations, Rosy agreed to conduct business with the Defendants. *Id.*

From April, 2006 to October, 2006, Defendants entered into 19 transactions with Rosy, which were memorialized in 19 invoices. (Doc. 1 at 4).  During this time, Rosy sold and/or consigned to D&A approximately $6.5 million worth of diamonds which were to be sold and paid for by Defendants, or returned to Rosy. *Id.* In exchange, D&A promised to make scheduled monthly payments to Rosy, the last of which was due on January 22, 2007. *Id.* D&A made its scheduled monthly payments, as promised, through October, 2006. *Id.*

However, in November of 2006, Rosy was notified by Davis that approximately $4 million worth of diamonds that Defendants had purchased from Rosy had been stolen from Davis at the Florida Mall. *Id.* According to Davis, while shopping at the Florida Mall in Orlando, FL, he was carrying a shopping bag containing $4 million worth of diamonds. (Doc. 1 at 4-5).  While Davis was eating lunch in the food court, he set the bag containing the diamonds on the floor under his table. (Doc. 1 at 5). After finishing his lunch, however, Davis claims he forgot to pick the bag back up. *Id.*  When Davis arrived home, he realized that he left the bag behind and went back to the Florida Mall to look for it. *Id.* Davis, with the help of Mall Security, was able to recover the bag,

-2-

but not the diamonds. *Id.* Six days later, Davis filed a police report with the Orange County Sheriff's Office regarding this event. (Doc. 1-2 at 11-13).

Subsequent to the alleged theft, Defendants have failed to make the scheduled monthly payments on eleven open invoices, or in the alternative, to return the diamonds to Rosy. *Id.* Rosy states that it has made numerous oral and written requests for payment or return of the diamonds, but Defendants have refused to comply. (Doc. 1 at 6). Thus, Plaintiff brings this action.

## II. Standard of Review

In ruling on a motion to dismiss, this court must view the complaint in the light most favorable to the Plaintiff, *Scheuer v. Rhodes,* 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.,* 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The Court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson,* 355 U.S. 41 45-46 (1957). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss, "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.,* 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr.*

-3-

*for Choice, Inc.,* 253 F.3d 678, 683 (11th Cir. 2001).  Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Id.* (internal citation and quotations omitted).  "A complaint need not specify in detail the precise theory giving rise to the recovery.  All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests."  *Sams v. United Food and Comm'l Workers Int'l Union,* 866 F.2d 1380, 1384 (11th Cir. 1989).

### III. Legal Analysis

The majority of Defendants' motion is simply an argument that the facts, as alleged by Rosy, are incorrect and/or incomplete. Such argument is inappropriate in a motion to dismiss, and the Court will not consider or address Defendants' factual allegations here. Instead, this Court will assume for purposes of this Order, as it must, that all facts alleged in the Complaint are true. Thus, the Court moves on to the more appropriate legal arguments made by Defendants.

*A) Fraud In the Inducement*

First, Defendants argue that Plaintiff has failed to sufficiently plead the elements required to maintain a claim for fraud in the inducement. To sustain a cause of action for fraud in the inducement, a Plaintiff must allege:

(1) the defendant made a false statement regarding a material fact; (2) the defendant knew that the statement was false when he made it or made the statement knowing he was without knowledge of its truth or falsity; (3) the defendant intended the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment.

*Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004).

-4-

Defendants' argument is completely without merit, as Plaintiff has clearly alleged all four elements of this claim in the Complaint.

*B) The Economic Loss Rule*

Defendants next argue that Plaintiff's action for fraudulent inducement is barred by Florida's economic loss rule, which states that "[u]nder Florida law, no cause of action [in tort] exists concurrent with a breach of contract claim unless there is damage due to [the alleged tortious conduct] that is separate from damages resulting from any subsequent contractual breach." *Argonaut Dev. Group, Inc. v. SWH Funding Corp.*, 150 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001).

Plaintiff, however, argues that this case fits into an exception to the economic loss rule created by the Florida Supreme Court in *HTP, Ltd. v. Lineas Aerea Costarricences,* 685 So.2d 1238 (Fla. 1996), which permits some actions for fraudulent inducement and negligent misrepresentation to be maintained, along with claims of breach of contract, despite the economic loss rule.

> The decisions of the Florida Supreme Court allowing tort actions for fraud in the inducement and negligent misrepresentation to proceed, despite the existence of a contractual relationship and the absence of damage to anything other than the product itself, have been dependent upon the independence of the tort from the contractual relationship. *See HTP*, 685 So. 2d at 1240 ("fraud in the inducement is an independent tort and is not barred by the economic loss rule"); *see also Hotels of Key Largo, Inc.*, 694 So.2d at 77 (discussing when fraud is separable from a contractual relationship). In other words, the actions that comprised the tort (i.e., the negligent or fraudulent misrepresentations) were separable or distinct from the subsequent contractual relationship. On the other hand, when the actions complained of relate directly to the subject matter of the parties' agreement, or are interwoven with the agreement, no independent tort exists and the economic loss rule applies. *See Meterlogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1362 (S.D. Fla. 2000) ("One cannot avoid the economic loss rule by merely labeling a claim as fraud. The fraud must be separate and distinct from the breaching party's performance of the contract."); *In re Suncoast Towers S. Assocs.*, 1999 Bankr. LEXIS 770, at *99, Nos. 98-10537-BKC-AJC, 98-1451- BKC-AJC-A, 1999 WL 549678, at *34 (Bankr. S.D. Fla. Jun. 17, 1999) ("In Florida, fraud in the inducement only survives the

economic loss rule if it is independent of the contractual breach. The fraudulent inducement claims which are barred are those inseparably embodied in the parties' subsequent agreement.") (citation omitted). Finally, it should be observed that the economic loss rule was developed primarily to address the allocation of risk in the sphere of products liability cases, and that is where the rule continues to have its greatest application. *See Moransais*, 744 So. 2d at 973 (explaining that the economic loss rule has it origins in products liability cases and stating the Florida Supreme Court "remains sound in its adherence to the fundamental principles" announced in those cases).

*Premix-Marbletite Mfg. Corp. v. SKW Chems., Inc.*, 145 F. Supp. 2d 1348, 1358-1359 (S.D. Fla. 2001).

In Counts I and II, Rosy alleges fraud in the inducement related to Defendants' representations that they "were in the business of selling diamonds, had the financial capabilities to purchase diamonds from Rosy Blue, and had the clientele within the United States to proficiently sell diamonds at a profit." (Doc. 12 at 10). These statements were allegedly made to illustrate to Plaintiff that a business relationship with Defendants would be successful and profitable. The assertions did not relate to the terms of any contract, and were not embodied in such.  Therefore, it appears at this time that Counts I and II are not barred by Florida's economic loss rule, and will not be dismissed.

However, Plaintiff's causes of action for Civil Theft, alleged in Counts VI and VII, and Conversion, alleged in Counts IV and V, are barred by the economic loss rule. Plaintiff argues that these claims should be allowed because the diamonds remained the property of Rosy until they were paid for in full by Defendants. This fact, however, is irrelevant to the application of the economic loss rule. Plaintiff's conversion and civil theft claims are both premised on the same actions that provide the basis for the breach of contract claim, and as such, are barred by the economic loss rule.  Counts IV, V, VI and VII are ,therefore, dismissed.

### C) Breach of Contract

Defendants argue that Count III should be dismissed because Rosy fails to allege the existence of a contract, and there is no written agreement attached to the Complaint. Defendants' argument fails because an action for breach of contract does not require a written contract.[2] Plaintiff's have alleged that the parties made an agreement, that Defendants breached that agreement, and that Plaintiff suffered damage as a result. This is sufficient to support a claim for breach of contract. *See American Color Graphics, Inc. v. Brooks Pharmacy, Inc.,* 2006 WL 539543, *3 (M.D.Fla. March 6, 2006). Count III will not be dismissed.

### D) Equitable Lien, Constructive Trust and Replevin

Counts VIII, IX, X and XI are merely requests for various types of relief, which Defendants argue are inappropriate in this case. Again, Defendants' arguments are based on factual disputes, which are inappropriate at this stage. Plaintiff admits that it made a typographical error in the original complaint, and mistakenly referred to an address that does not exist. (Doc. 12 at 18). Therefore, this Court will grant Plaintiff leave to file an amended complaint, so it may fix this error (as well as re-number the Counts correctly). However, it is entirely inappropriate for the Defendants to ask this Court, in a motion to dismiss, to resolve such factual disputes and determine which type of remedy, if any, would be appropriate in this action. Therefore, Counts VIII, IX, X and XI will not be dismissed.

---

[2]Although, here, Plaintiff does allege that the agreement was reduced to writing in 19 separate invoices.

**IV. Conclusion**

Accordingly, it is

**ORDERED** that Defendants' Motion to Dismiss (Doc. 8) is **GRANTED** in part and

**DENIED** in part. Counts IV, V, VI and VII of Plaintiff's Complaint (Doc. 1) are **DISMISSED**.

Plaintiff shall have leave to file an amended complaint within twenty (20) days of this Order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 30, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party